IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GENARO EDGAR ESPINOSA DORANTES # 420728, | ) ) ) | |
| Petitioner, | ) ) | NO. 3:19-cv-00543 |
| v. | ) ) | JUDGE RICHARDSON |
| KEVIN GENOVESE, | ) ) ) | |
| Respondent. | | |

**MEMORANDUM OPINION**

Respondent moves to dismiss this habeas corpus action as untimely. (Doc. No. 11.) Petitioner has responded in opposition to the motion (Doc. No. 13), and Respondent has replied. (Doc. No. 15.) The Court has reviewed the parties' filings and agrees with Respondent that Petitioner is not entitled to equitable tolling of the statute of limitations and that his petition is therefore untimely.

### I.   BACKGROUND AND PROCEDURAL HISTORY

Petitioner was convicted by a Davidson County jury of felony murder and aggravated child abuse on April 12, 2007. (Doc. No. 10-1 at 131, 136.) The trial court sentenced him to life and 22 years in prison, respectively, and ordered the sentences to run consecutively. (*Id.*) The trial court denied Petitioner's motion for new trial on July 20, 2007.

On November 30, 2009, the Tennessee Court of Criminal Appeals vacated Petitioner's conviction for aggravated child abuse but affirmed the felony murder conviction and modified his sentence to life in prison. (Doc. No. 10-10.) In an opinion entered January 25, 2011, the Tennessee Supreme Court reversed that judgment in part, affirmed the conviction and life sentence for felony murder, and reinstated the conviction and sentence for aggravated child abuse. (Doc. No. 10-20.)

Petitioner did not file any further challenges to his convictions or sentences until he placed the pending habeas petition in the prison mail system on June 17, 2019.[1] (Doc. No. 1 at 20.) On July 9, 2019, the Court ordered Respondent to file an answer or motion in response to the petition (Doc. No. 4), and on August 30, 2019, Respondent filed the pending motion to dismiss along with a memorandum in support and the relevant portions of the state-court record. (Doc. No. 10–12.) Petitioner responded to the motion to dismiss on September 17, 2019, (Doc. No. 13), and Respondent filed a reply on October 3, 2019, at the Court's direction. (Doc. Nos. 14–15.)

## II.    ANALYSIS

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year limitations period for habeas petitions brought by prisoners challenging state-court convictions. 28 U.S.C. § 2244(d). Under this provision, the limitations period runs from the latest of four enumerated events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Petitioner does not allege any circumstances triggering subsections (B)–(D). Accordingly, his limitations period began to run on Monday, April 25, 2011, 90 days after

---

[1] Under the prison mailbox rule, the petition is deemed to have been filed when it was delivered to prison authorities for mailing to the federal court. *Houston v. Lack*, 487 U.S. 266, 270 (1988) (pro se prisoner's notice of appeal deemed "filed" on date notice is deposited in prison mailbox for forwarding to clerk of court).

the Tennessee Supreme Court ruled on his direct appeal, when the time within which he could have sought review by the United States Supreme Court expired. *See Jimenez v. Quarterman*, 555 U.S. 113, 119–120 (2009) (holding that state convictions are final under § 2244(d)(1)(A) when Supreme Court certiorari is exhausted or when the time for filing a certiorari petition expires); S. Ct. R. 13.3 (providing 90 days from date of entry of the judgment or order sought to be reviewed).

Although the running of the period is tolled under § 2244(d)(2) while any "properly filed" collateral review petition is pending in state court, Petitioner never filed such a petition in state court. His one-year limitations period, therefore, ran without interruption until it expired on Wednesday, April 25, 2012. His federal habeas petition filed on June 17, 2019, is therefore time-barred unless he can establish a basis for tolling the limitations period for more than seven years.

AEDPA's one-year statute of limitations may be subject to equitable tolling when the failure to file in a timely fashion "unavoidably arose from circumstances beyond that litigant's control." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 461 (6th Cir. 2012); *accord Holland v. Florida*, 460 U.S. 631, 645 (2010). To be entitled to equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (citation and internal quotation marks omitted). This is a fact-intensive inquiry to be evaluated on a case-by-case basis, and Petitioner carries "the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Keeling*, 673 F.3d at 462.

Petitioner argues that he is entitled to equitable tolling because his former counsel did not tell him about additional remedies available after his direct appeal and because a language barrier prevented him from learning about or pursuing those remedies on his own. (Doc. No. 1 at 19; Doc. No. 13.) Specifically, Petitioner asserts that he is a citizen of Mexico and "does not speak English

proficiently enough to communicate with other inmates or staff." (Doc. No. 13 at 5.) He says that he "gets by" in daily prison life by using single words and hand signals to communicate. (*Id.*) He asserts that the prison does not have legal materials in his native language and that he has not "had access to a translator until January of this year when an inmate, capable of speaking [Petitioner's] language, arrived at the Turney Center Industrial Complex." (*Id.*)

The alleged fact that Petitioner's counsel did not advise him of his post-conviction or habeas remedies does not excuse his late filing. The law is clear that a prisoner's lack of actual knowledge about available legal remedies or the time limits for pursuing them is not a sufficient basis for equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (lack of actual knowledge of § 2244 deadline insufficient to toll); *Reed v. United States*, 13 F. App'x 311, 313 (6th Cir. 2001) (holding that "ignorance about filing a § 2255 motion did not toll the limitations period"); *Clinton v. Bauman*, No. 10-11528, 2011 WL 282384 (E.D. Mich. Jan. 25, 2011) (ignorance of state post-conviction remedies did not warrant tolling); *Williams v. Warden of Lieber Corr. Inst.*, No. 0:12-1705, 2013 WL 1857268 (D.S.C. May 2, 2013) (petitioner's unawareness that he could file a federal habeas petition not grounds for equitable tolling).

Serious attorney misconduct such as abandonment may constitute extraordinary circumstances in this analysis, and "a client [cannot] be faulted for failing to act on his behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." *Maples v. Thomas*, 132 S. Ct. 912, 923–24 (2012). But Petitioner does not allege that he was never informed that his direct appeal had concluded; nor does he allege that he believed counsel would continue to act on his behalf after that juncture. Thus, he does not allege facts constituting attorney abandonment or other egregious misconduct; he simply alleges that counsel did not advise him about additional remedies he could pursue in the future. However, ignorance of the available

4

remedies does not warrant equitable tolling even when it is the result of lack of advice from counsel: "[i]nsufficient legal advice is not enough to support equitable tolling in the Sixth Circuit." *Steward v. Moore*, 555 F. Supp. 2d 858, 872 (N.D. Ohio 2008) (citing *Jurado v. Burt*, 337 F.3d 638, 644–45 (6th Cir. 2003)).

Nor does Petitioner's alleged language barrier necessarily warrant equitable tolling. In *Cobas v. Burgess*, the Sixth Circuit held that an untimely habeas petitioner's being raised in Cuba and "unable to understand, read or write the English language" did not automatically entitle him to equitable tolling. 306 F.3d 441 (6th Cir. 2002). The court announced the following guideline to be applied to equitable tolling claims by non-English-speaking petitioners:

> We hold that where a petitioner's alleged lack of proficiency in English has not prevented the petitioner from accessing the courts, that lack of proficiency is insufficient to justify an equitable tolling of the statute of limitations. An inability to speak, write and/or understand English, in and of itself, does not automatically give a petitioner reasonable cause for failing to know about the legal requirements for filing his claims.
>
> In general, the existence of a translator who can read and write English and who assists a petitioner during his appellate proceedings implies that a petitioner will not have reasonable cause for "remaining ignorant of the legal requirement for filing his claim." In announcing this rule, we should note that the translator acting on behalf of a non-English speaking petitioner need have no qualification other than the ability to communicate in English. Since a petitioner does not have a right to assistance of counsel on a habeas appeal, and because an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations, we are loath to impose any standards of competency on the English language translator utilized by the non-English speaking habeas petitioner.

*Id.* at 444 (internal citations omitted). *Cobas* has been construed to mean that "a non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel or other source." *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006). Accordingly, an inmate

colorably asserts entitlement to equitable tolling when he alleges that "he is wholly incapable of reading, writing, or speaking English, had no access to Spanish language legal materials, and attempted on numerous occasions to obtain assistance in pursuing his claims." *Planes v. Berghuis*, No. 07-cv-14000, 2009 WL 2382006, at *5 (E.D. Mich. July 31, 2009).

Petitioner's allegations here do not rise to that level. He asserts that he is incapable of significant communication in English, that he lacked access to legal materials in his own language, and that he did not have access to another inmate capable of translating for him until January 2019.[2] But even so, Petitioner does not allege a single occasion throughout all those years on which he *requested* translation services from the prison or from any contacts outside the prison. *Cobas* expressly disavows any requirement that the person translating for a petitioner have any "qualification other than the ability to communicate in English" or meet any other "standards of competency." *Cobas*, 306 F.3d at 444. All Petitioner needed was to have someone translate or act as go-between with the English-speaking library staff and explain the library materials to him in order to have the same information to which any other inmates had access. There is no indication that Petitioner asked for such assistance even once, as compared to the "numerous occasions" on which the petitioner in *Planes* sought assistance.

Even aside from his failure to establish an extraordinary circumstance, Petitioner's failure to make any attempt to obtain translation services to research his available remedies clearly demonstrates his lack of due diligence in this matter. In another case involving a non-English-speaking petitioner, the Sixth Circuit recently explained that to establish diligence such a petitioner

---

[2] The Court sets aside its skepticism that Petitioner did not encounter a bilingual inmate in more than a decade of incarceration and presumes his allegation to be true for the purpose of ruling on the pending motion.

6

"must show that 'he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source.'" *Levy v. Osborne*, 734 F. App'x 960, 963 (6th Cir.), *cert. denied sub nom. Levy v. Parris*, 139 S. Ct. 293, (2018) (quoting *Mendoza*, 449 F.3d at 1070). The court compared cases from other circuits in the context of what constitutes "diligent efforts":

> A review of cases addressing the diligence requirement from our sister circuits places Levy's actions into perspective. For example, the Second Circuit has held that petitioners who "claimed nothing more than the unavailability of personnel within their prisons who could translate for them during the applicable limitations periods" failed to act with due diligence. *Diaz* [*v. Kelly*], 515 F.3d [149,] 154 [(2d Cir. 2008)]. In *Diaz,* the court found particularly relevant that there was "no allegation of any efforts to contact anyone outside the prison who might assist in making them aware, in their language, of legal requirements for filing a habeas corpus petition, nor what efforts were made to learn of such requirements within their places of confinement." *Id.*
>
> At the other end of the spectrum, the Third Circuit has held that a petitioner who "attempted to pursue his claims repeatedly" did satisfy the diligence requirement. Pabon [v. Mahanoy], 654 F.3d [385,] 403 [(3rd Cir. 2011)]. Indeed, that court noted that it "count[ed] ten or more efforts where [the petitioner] sought assistance, both before and after the AEDPA deadline." *Id.* at 402.

*Levy*, 734 F. App'x at 963.[3] It went on to affirm this Court's determination that the petitioner had not exercised diligence by asking for translation assistance "only one time," which the Sixth Circuit characterized as "minimal efforts . . . to pursue his rights." *Id.* at 963–64. Petitioner in this case does not allege any effort whatsoever to obtain translation assistance to pursue his remedies. Based on his petition and reply, it appears that Petitioner sat passively and did nothing at all to discover or pursue any legal remedies for the eight years between the Tennessee Supreme Court's ruling in his case and the arrival of a bilingual inmate at Turney Center.

---

[3] This Sixth Circuit case may explain the inapt reference to Petitioner as "Levy" in Petitioner's reply to Respondent's answer. (Doc. No. 13 at 3). Perhaps that reference was the result of a (mistakenly) unchanged cut-and-paste from briefing in the *Levy* case. In any event, *Levy* is indeed applicable and instructive in this case.

7

Moreover, even upon gaining access to a bilingual translator in January, Petitioner did not promptly file his habeas petition. Instead, Petitioner says he began contacting the Innocence Project in New York and the Consular of Mexico at the Embassy of the United Mexican States in Little Rock, Arkansas. (Doc. No. 13 at 4.)[4] Approximately five more months passed before Petitioner submitted his habeas petition. This additional significant delay—after the alleged impediment to timely filing was cured by the arrival of a translator, and after Petitioner clearly knew or should have known that his habeas corpus petition was already many years late—is further confirmation that Petitioner was not diligent in the pursuit of his rights.

## III. CONCLUSION

For the reasons explained above, Petitioner has not established either the extraordinary circumstances or the diligence required to warrant equitable tolling in this case. Accordingly, Respondent's motion to dismiss will be granted.

An appropriate Order shall be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[4] Petitioner does not actually specify when these contacts occurred. If he was able to communicate effectively with outside entities before the January 2019 arrival of the bilingual inmate, that fact is even more damaging to his claim of diligence. In order to construe the pleadings in the light most favorable to Petitioner, the Court presumes that he required the assistance of the bilingual inmate to initiate these contacts and that he would have been unable to do so before January 2019.